657 S.E.2d 756

**In the Matter of Former Jasper County Magistrate Rodney A. KINLAW, Respondent.**

**No. 26434.**

Supreme Court of South Carolina.

Submitted Jan. 22, 2008.

Decided Feb. 11, 2008.

492

Lesley M. Coggiola, Disciplinary Counsel, and James G. Bogle, Jr., Senior Assistant Attorney General, both of Columbia, for Office of Disciplinary Counsel.

Rodney A. Kinlaw, of Hardeeville, pro se.

PER CURIAM.

In this judicial disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21, RJDE, Rule 502, SCACR. In the Agreement, respondent admits misconduct and consents to the imposition of a public reprimand pursuant to Rule 7(b), RJDE, Rule 502, SCACR.[1] The facts as set forth in the Agreement are as follows.

---

1. Respondent no longer holds judicial office. A public reprimand is the most severe sanction the Court can impose when a judge no longer holds judicial office. See In re O'Kelley, 361 S.C. 30, 603 S.E.2d 410 (2004); In re Gravely, 321 S.C. 235, 467 S.E.2d 924 (1996).

## FACTS

In 1999 and 2006, the Chief Justice of the Supreme Court of South Carolina issued orders which set forth specific requirements for financial accounting in all magistrate courts in this State. Respondent attended training concerning the requirements of the orders but knowingly did not comply with them in at least one or more of the following: 1) respondent failed to insure that deposits were made as required by the orders and 2) respondent failed to insure that the accounts were reconciled monthly as required by the orders.

On or about February 5, 2007, the Chief Magistrate of Jasper County, Sydney McDonald, requested by e-mail that all magistrates bring their bank reconciliation paperwork for the months of October, November, and December 2006 to the quarterly meeting to be held on or about February 8, 2007. Respondent appeared at the meeting but brought only daily deposit paperwork. Chief Magistrate McDonald informed respondent that he did not bring the correct papers and he could supply the original bank statements if the reconciliations would not print.

That evening, respondent returned to his office to obtain the original bank statements. On or about the morning of Friday, February 9, 2007, respondent asked his secretary to print out monthly balance reports for the last quarter of 2006 and January 2007. For unrelated reasons, respondent's secretary quit the same day.

On or about Sunday, February 11, 2007, respondent requested a meeting with Chief Magistrate McDonald to discuss his secretary and money. Chief Magistrate McDonald met with respondent at the Ridgeland's Magistrate's Office at approximately 5:00 p.m. Respondent was in possession of a bank bag containing checks and a bag of mail that had not been filed.

During the meeting, Chief Magistrate McDonald discovered no deposits had been made by respondent for the month of January 2007. Respondent informed the Chief Magistrate that his secretary had quit and that he believed she had taken cash because there was none in the bank bag with the checks and because no money had been deposited in the bank during the month of January 2007. Chief Magistrate McDonald

asked respondent if he had been conducting the reconciliations required by the Chief Justice's orders. Respondent stated he had been doing so for each and every month and that he had initialed the bank statements to so indicate.

Later, however, when examining the bag of mail respondent had brought to the meeting, an unopened bank statement from August 2006 was discovered. When Chief Magistrate McDonald inquired how respondent could have been conducting monthly reconciliations if the August 2006 bank statement had not been opened, respondent opined that he must have received a copy from the bank and reiterated that he had reconciled and initialed every bank statement through December 2006.

ODC's investigators traveled to respondent's office on or about February 12, 2007, and met with respondent. When they arrived, respondent was attempting to reconstruct his monthly reports. He told the investigators that his secretary quit after he asked her to provide the monthly report for January 2007. Respondent insinuated that the secretary was involved in the theft of cash from the January 2007 receipts.

The investigators contacted the secretary and she came to the office. The secretary reported that respondent did not ask her for the January 2007 monthly statement and stated she quit because respondent criticized her for providing bond hearing procedures to Chief Magistrate McDonald. The secretary acknowledged that deposits in January had not been made because she had not had time and said the alleged missing cash was in the filing cabinet in respondent's office. The investigators retrieved $1,995.00 in an envelope from the filing cabinet in respondent's office which was more than the $1,706.61 in cash that daily deposit listings showed had been received to date in 2007. In his written statement, respondent claimed he had not put the money in the filing cabinet and did not know it was there. The secretary, who was present when the money was retrieved, stated it was not in the same envelope she had left it in and that the cash and checks received in January had been left in the same envelope when she resigned. Respondent later acknowledged to investigators that he had not made the required monthly reconciliations at any time during the four years he had been a magistrate.

On or about February 14, 2007, the Court placed respondent on interim suspension. In the order of suspension, respondent was directed to deliver all books, records, funds, property, and documents relating to his office to the Chief Magistrate for Jasper County.

Contrary to the Court's February 14, 2007 order, respondent removed magistrate court case files from his office. On or about February 21, 2007, Chief Magistrate McDonald required respondent return the court files to her. Respondent did not promptly return the files. Soon thereafter, Chief Magistrate McDonald went to respondent's magistrate office and discovered that the court-issued computer was also missing. Chief Magistrate McDonald and an ODC investigator contacted respondent and requested that he return the computer and all other court-related items to her at respondent's office. Thereafter, respondent met Chief Magistrate McDonald at the magistrate's office and returned the computer. On or about Monday, February 26, 2007, respondent returned the court files to Chief Magistrate McDonald.

## *LAW*

By his misconduct, respondent admits he has violated the following Canons of the Code of Judicial Conduct, Rule 501, SCACR: Canon 1 (judge shall uphold the integrity of the judiciary); Canon 1A (judge should participate in establishing, maintaining, and enforcing high standards of conduct and shall personally observe those standards so that the integrity of the judiciary will be preserved); Canon 2 (judge shall avoid impropriety in all activities); Canon 2A (judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity of the judiciary); Canon 3 (judge shall perform the duties of judicial office diligently); Canon 3(B)(2) (judge shall be faithful to the law); Canon 3(B)(8) (judge shall dispose of all judicial matters promptly and efficiently); Canon 3(C)(1) (judge shall maintain professional competence in judicial administration and should cooperate with other judges and court officials in the administration of court business); Canon 3(C)(2) (judge shall require staff to observe standards of diligence that apply to the judge). Further, respondent admits that he has violated Rule 7(a)(1) (it shall be ground for discipline for judge to violate the Code

of Judicial Conduct), Rule 7(a)(1)(4) (it shall be ground for discipline for judge to persistently fail to perform judicial duties), Rule 7(a)(7) (it shall be ground for discipline for judge to willfully violate a valid court order issued by a court of this state), and Rule 7(a)(9) (it shall be ground for discipline for judge to violate the Oath of Office) of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR.

## CONCLUSION

■ We accept the Agreement for Discipline by Consent and issue a public reprimand. Respondent shall not apply for, seek, or accept any judicial position whatsoever in this State without the prior written authorization of this Court after due service on ODC of any petition seeking the Court's authorization. Respondent is hereby reprimanded for his misconduct.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.